UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JEANELLE FAITH                                                                      Plaintiff

v.                                                          Civil Action No. 3:20-cv-458-RGJ

GREAT WEST CASUALTY COMPANY                                            Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Great West Casualty Company ("Great West") moves for summary judgment on Plaintiff Jeanelle Faith's ("Faith's") claims. [DE 17]. Faith responded [DE 19], and Great West replied. [DE 23]. Great West also moves to Exclude Faith's Designated Expert. [DE 18]. Faith responded [DE 20] and Great West replied. [DE 22]. These matters are ripe. For the reasons below, Great West's Motion for Summary Judgment [DE 17] is **GRANTED** and Faith's Complaint [DE 1-2] is **DISMISSED**. Great West's Motion to Exclude [DE 18], Motion in Limine [DE 33], and Motion to Exclude Non-Specified Exhibits [DE 41], and Faith's Motion in Limine [DE 29] and Motion for Leave to Conduct Attorney Voir Dire Examination [DE 30], are **DENIED AS MOOT**.

## I.     BACKGROUND

Faith was injured in a May 10, 2017 car accident by a Great West insured motorist. [DE 17-1 at 55; DE 19 at 507]. Great West settled the full amount of property damage with Faith on June 9, 2017. [DE 17-1 at 56; DE 19 at 509]. Faith then sued Great West on June 18, 2017 for medical expenses and related damages. [DE 17-1 at 55-66; DE 19 at 505-10]. Faith initially claimed "$15,188.75 in past medical expenses and unspecified future medicals, lost wages, and permanent impairment." [DE 17-1 at 60, 64]. The parties engaged in settlement negotiations.

1

[DE 17-1 at 57-66; DE 19 at 506-10]. Faith's made her first demand of $750,000 on May 24, 2018. [DE 17-1 at 62; 19-5 at 632]. Great West deposed Faith on October 2, 2018 and made its first settlement offer of $30,000 on October 4, 2018. [DE 17-1 at 60, 64; DE 19-5 at 635-36]. Faith updated her medical expenses at mediation on January 7, 2019 to include "$23,000 in new medical expenses," and Great West increased its offer to $75,000 on January 8, 2019. [DE 17-1 at 64; DE 19-5 at 637-38]. During the time before trial, Great West was investigating Faith's claim, requesting records, and communicating with Faith's attorney. [DE 17-1 at 55-73; DE 19-5 at 618-48]. Great West's largest offer was $170,000, "the Friday before trial in October, 2019." [DE 17-1 at 76; DE 19 at 506]. The jury returned a verdict against Great West for $646,000. [DE 17-1 at 76; DE 19 at 506].

Faith filed this action, a claim for bad faith under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), against Great West in state court. [DE 1-2 at 7-10]. Great West removed on diversity jurisdiction. [DE 1 at 2].

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

## III.    DISCUSSION

Great West argues that Faith's bad faith claim fails on summary judgment because she cannot establish the necessary element of her claim, that Great West's conduct was outrageous. Faith argues that there is sufficient evidence to present her bad faith claim to a jury.

### A.  Kentucky Unfair Claims Settlement Practices Act

 KRS 304.12-230 creates both first-party and third-party obligations to settle insurance claims in good faith. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 532 (6th Cir. 2006). KUCSPA "imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured or to another person bringing a claim under an insurance policy." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006) (citing KRS 304.12-230).

3

To state a claim under KUCSPA, a plaintiff must "meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or a claimant' by the insurance company that would support an award of punitive damages. *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) and citing *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003), *as modified* (June 27, 2003)). In *Wittmer v. Jones*, the Kentucky Supreme Court specifically described the standard as "outrageous" conduct by the insurer, "because of the defendant's evil motive or his reckless indifference to the rights of others." 864 S.W.2d at 890. In *United Services Automobile Association v. Bult*, the court describes the threshold that a plaintiff needs to show as "high indeed." 183 S.W.3d 181.

After meeting this initial showing, a plaintiff must then establish three elements to maintain a claim of bad faith under the KUCSPA:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890. "[I]n order to survive a motion for summary judgment, a plaintiff in a bad faith action must come forward with evidence, sufficient to defeat a directed verdict at trial, which reveals some act of conscious wrongdoing or recklessness on the part of the insurer." *Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 502 F. App'x 425, 428 (6th Cir. 2012) (quoting *Matt v. Liberty Mut. Ins. Co.*, 798 F. Supp. 429, 434 (W.D. Ky. 1991), *aff'd,* 968 F.2d 1215 (6th Cir. 1992)). Thus, the initial inquiry is whether Plaintiff has met her burden of showing Defendant's conduct was "outrageous." *Wittmer*, 864 S.W.2d at 890. *See also Phelps*, 736 F.3d at 703, *and Cobb King v. Liberty Mut. Ins. Co.*, 54 Fed.Appx. 833, 838 (6th Cir. 2003).

### B.    Outrageous Conduct

The Sixth Circuit has identified several factors that may support a finding of outrageous conduct that is bad faith: "lowball" offers that are "barely above" the claimant's actual damages; "extensive delay" in settling or requesting the claimant's records; refusing to disclose the insured's policy limits; and "troubling claims-handling practices" such as "switching claims adjustors without explanation, ... refusing to increase an offer without documentation of additional damages, failing to ask [a claimant] to submit to an independent medical examination, and failing to include facts in the claim file that would support a jury verdict in [the claimant's] favor." *Phelps*, 736 F.3d at 705–07. "[A]n insurer is entitled to challenge a claim through litigation if the claim is 'fairly debatable,' on either 'the law or the facts.' *Phelps*, 736 F.3d at 704 (citing *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889–90 (Ky. Ct. App. 1994)) and (*Wittmer*, 864 S.W.2d at 890).

Great West first argues that Faith's claim fails because there is a high evidentiary standard for outrageous conduct, and discovery has produced no evidence showing Great West acted unreasonably. [DE 17-1 at 70-73]. Faith does not directly respond to this argument but argues that Great West was obligated to pay her claim. [DE 19 at 518]. She contends that a reasonable juror could find that Great West "lacked a reasonable basis for denying offering a fair amount for Ms. Faith's Claim when it chose not to hire any experts even after having the plaintiff's disclosures before its own were due." [DE 19 at 519]. Finally, Faith argues that a reasonable juror could find that Great West "knew it did not have a reasonable basis or acted with reckless disregard as to whether such a basis existed." [DE 19 at 519]. Faith states that a juror could find this because of an email where "a claim supervisor purposefully deferred to her boss so she would not be responsible when the trial turned out how it did for their insured," and discusses the conclusions her expert has reached. [DE 19 at 519-23].

Faith argues that the standard for KUCSPA claims is "intentional misconduct or reckless disregard of the rights of an insured or a claimant" set forth in *Wittmer*, 864 S.W.2d at 890, not the heightened "evil motive" standard from *Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 738 (Ky. 2016). [DE 19 at 514-17]. Faith does not argue in her briefing what Great West did that was outrageous, intentional misconduct or reckless disregard of the rights of her rights. Few factors enumerated above are present on the record. Thus, Faith's only support is Great West's valuation of her claim (lowball offers) and the length of litigation (delay in settling).

### 1. Lowball Offers

The Court first turns to the valuation of Faith's claim. Faith filed the underlying lawsuit shortly after her accident, and then the parties engaged in settlement negotiations for Faith's medical expenses and related damages. [DE 17 at 55-66; DE 19 at 505-510]. Great West states that Faith initially claimed "$15,188.75 in past medical expenses and unspecified future medicals, lost wages, and permanent impairment." [DE 17-1 at 60]. Great West states that, on this basis, it offered her $30,000, which Faith rejected. [DE 17-1 at 64]. Faith's expert report also refers to this initial offer and rejection. [DE 19-5 at 635-36]. Great West states that Faith later updated her medical expenses to include "$23,000 in new medical expenses," and Great West increased its offer to $75,000 the next day. [DE 17-1 at 64]. Faith's expert report supports this. [DE 19-5 at 637-38]. Great West's actions demonstrate that it sought to value Faith's claim based on the available supporting documentation, which Great West is allowed to do when negotiating a settlement. *See Hollaway*, 497 S.W.3d at 739 ("[t]he KUCSPA only requires insurers to negotiate reasonably with respect to claims; it does not require them to acquiesce to a third-party's demands.") *See also Wilbers v. Geico Cas. Co.*, 338 F. Supp. 3d 644, 649 (E.D. Ky. 2018) (finding

no outrageous conduct or bad faith when an insurance company attempted to value a claim based on the available supporting documentation).

In her brief, Faith discusses the jury's verdict against Great West, which was $646,000 – a far cry from Great West's largest offer of $170,000. [DE 17-1 at 76; DE 19 at 506]. Yet "[d]isparity between a jury's award and an insurer's offers alone is insufficient to establish bad faith." *Madison v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-157, 2013 WL 3992410, at *7 (W.D. Ky. Aug. 2, 2013) (quotation omitted). Faith states that this "offer equal to the reserve was not made until the Friday before trial in October 2019." [DE 19 at 509]. While Faith understands what reserves are,[1] if Faith is arguing that Great West was acting outrageously by not immediately offering this amount of money, her "argument misapprehends the role reserves play in insurance regulation." *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 589 (Ky. Ct. App. 2019), *review denied* (Apr. 22, 2020). This is "[a] common misconception . . . that an insurer's loss reserves are the same as settlement authority. They are not. The main purpose of a loss reserve is to comply with statutory requirements. . . . It does not automatically authorize a settlement at that figure." *Id.* (quoting *Lipton v. Superior Ct.*, 48 Cal. App. 4th 1599 (1996)). Great West had a right to set a reserve higher – even much higher – than whatever offer it made, and it was not unreasonable or outrageous for it to make an offer based on the records and expenses that it was aware of at the time of the offers that it made, rather than on its reserves. *See Wells v. GEICO Gen. Ins. Co.*, No. CV 5:19-500-DCR, 2021 WL 3131316, at *16 (E.D. Ky. July 23, 2021). Based on this evidence, no reasonable juror could find Great West's actions to be outrageous conduct rising to the level of bad faith.

---

[1] Faith accurately explains in her brief that "Reserves are the amount of money set aside that will more likely than not be needed to resolve the claim." [DE 19 at 509]. *See* Black's Law Dictionary 1309 (7th ed. 1999) (defining reserves as "money set aside by a[n] . . . insurance company to cover future liability").

2. Delay in Settling

The Court next turns to the length of the litigation.  "[M]ere delay in settlement does not rise to bad-faith conduct."  *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579 (Ky. 2021) (citing *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 341 (Ky. 1986)).  Faith would have to come forward with "evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured."  *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997), *as modified* (Feb. 18, 1999), and *holding modified by Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733 (Ky. 2016).  Again, Faith does not point to Great West's specific conduct that was delay, or specific evidence that supports that the purpose of the purported delay was bad faith.  *Id.*

Faith was injured on May 10, 2017, Great West settled the full amount of property damage just one month later.  [DE 17-1 at 55-56, 76]. Faith sued on June 18, 2017 for medical expenses, and the jury verdict against Great West was returned on October 23, 2019.  [DE 19 at 506, 508-9; Case No. 17-CI-3016].  Great West made its first offer for medical expenses (for $30,000, as discussed above) on October 4, 2018, just two days after Faith's deposition testimony.  [DE 17-13 at 215].  None of these time frames indicate any outrageous conduct or delay but instead demonstrate action taken by Great West after the disclosure of discovery information.  If Faith is pointing to the fact that "[a]n offer equal to the reserve was not made until the Friday before trial in October, 2019."  [DE 19 at 509].  Again, no reasonable juror could find this to be evidence of outrageous conduct rising to the level of bad faith, because Great West was not acting outrageously by not offering her the limits of their reserves.  *See Wells*, 2021 WL 3131316, at *16.

The time that passed between Faith's accident and the jury verdict was almost two and a half years.  While a "mere delay" does not constitute bad faith, courts have found delays of

eighteen months to three years "may serve as evidence of bad faith." *Phelps*, 736 F.3d at 706–07 (collecting cases). Yet these cases involve a delay between the injury and the initial settlement offer. *See Phelps*, 736 F.3d at 706–07. Here, no such delay exists between Faith's injury and Great West's settlement offer on her medical expenses and in fact, here property claim was resolved in less than 30 days. [DE 17-1 at 55-56, 76; DE 17-13 at 215; DE 19 at 506, 508-9]. Moreover, after its initial settlement offer, when presented with updated medical expenses at mediation, Great West reevaluated and increased its offer on the next day. [DE 17-1 at 64; DE 19-5 at 637-38]. Great West settled the property damage claim with Faith quickly, and after Faith made her first demand on May 24, 2018, Great West made its initial offer on October 2, 2018, based on the records and expenses available to it, shortly after taking Faith's deposition. [DE 17-1 at 62-63; DE 19-4 at 592; 19-5 at 632]. Furthermore, from a review of the record, at least some of the 'delay' is attributable to Faith's inadequate discovery responses. [DE 17-1 at 74]. The evidence suggests that Great West was seeking discovery necessary to evaluate an appropriate settlement range, and no reasonable juror would find that Great West was delaying. *See Powell v. Cherokee Ins. Co.*, No. 5:09-CV-00205-R, 2011 WL 2160856, at *7 (W.D. Ky. June 1, 2011).

Faith points to an email written by a claim supervisor, in which the claim supervisor "purposefully deferred to her boss so she would not be responsible when the trial turned out how it did for their insured." [DE 19 at 520]. This is not evidence of "intentional misconduct or reckless disregard of the rights of an insured or a claimant" that rises to the level of outrageous conduct. *Wittmer*, 864 S.W.2d at 890. Faith also points to the "scathing report" issued by her expert "criticizing [Great West's] handling of this claim." [DE 19 at 520]. The Court considered this report in its analysis, which does not – nor does the record as a whole – show any conduct on the

9

part of Great West that approaches the sort of outrageous or intentional misconduct or reckless disregard for Faith's rights that would support an award of punitive damages.[2]

Having reviewed all of the cited materials in a light most favorable to Faith, the Court concludes that no reasonable juror could find that Great West's actions rose to the level of outrageous conduct as contemplated by the KUCSPA, and that Faith has not put forth enough evidence to support a reasonable inference that Great West's conduct was so egregious that she is entitled to punitive damages.[3]   Therefore, Faith cannot proceed with her bad faith claim under Kentucky law, and summary judgment is appropriate.  *See Bult*, 183 S.W.3d at 186 ("Absent such evidence of egregious behavior, [a] tort claim predicated on bad faith may not proceed to a jury"), *Shaheen v. Progressive Cas. Ins. Co.*, 673 F. App'x 481, 488 (6th Cir. 2016), *and National Sur. Corp.*, 502 F. App'x at 428.

---

[2] The expert report does contain legal conclusions that the court cannot consider. *See, e.g. Cook v. Erie Ins. Co.*, 478 F. Supp. 3d 658, 664 (S.D. Ohio 2020), *reconsideration denied,* No. 2:18-CV-00282, 2021 WL 1056626 (S.D. Ohio Mar. 19, 2021) (stating that experts cannot testify regarding legal conclusions).

[3] Great West also argues that, even if Faith could meet the high evidentiary standard for outrageous conduct and had produced evidence showing Great West acted unreasonably, her claim would still fail for two separate reasons.  The first, Great West argues, is that it did not lack a reasonable basis for its position in the underlying litigation, because it investigated Faith's claims once it learned her identity, and made settlement offers beyond Faith's provided medical expenses.  [DE 17-1 at 73-77].  Great West argues that other reason Faith's claim fails is because she cannot prove that Great West knew there was no basis for its evaluation of her claim or that it acted with reckless disregard for whether such basis existed.  [DE 17-1 at 77-78].  The Court need not resolve these issues, as no reasonable juror could find that Great West's actions rose to the level of outrageous, as discussed above.  *See Glass,* 996 S.W.2d at 448, *and Scott v. Deerbrook Ins. Co.*, 714 F. Supp. 2d 670, 679 (E.D. Ky. 2010).

## IV.    CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1.  Great West's Motion for Summary Judgment [DE 17] is **GRANTED**;

2.  Faith's Complaint [DE 1-2] is **DISMISSED**;

3.  Great West's Motion to Exclude [DE 18] is **DENIED AS MOOT;**

4.  Faith's Motion in Limine [DE 29] is **DENIED AS MOOT**;

5.  Faith's Motion for Leave to Conduct Attorney Voir Dire Examination [DE 30] is **DENIED AS MOOT**;

6.  Great West's Motion in Limine [DE 33] is **DENIED AS MOOT**;

7.  Great West's Motion to Exclude Non-Specified Exhibits [DE 41] is **DENIED AS MOOT**.

Rebecca Grady Jennings, District Judge
United States District Court

January 3, 2022

Cc:    Counsel of record